■ In the Matter of ASHLEY L., Alleged to be the Child of a Mentally Ill Parent. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MADELINE L., Appellant. [802 NYS2d 283]—

Peters, J. Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered December 30, 2004, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be the child of a mentally ill parent, and terminated respondent's parental rights.

Respondent is the mother of Ashley L. (born in 2003), who was taken into protective custody when she was one day old due to respondent's extensive history of mental illness and her refusal to accept supportive services. One year after Ashley was found to be a neglected child and placed with petitioner, petitioner commenced this proceeding, pursuant to Social Services Law § 384-b, to terminate respondent's parental rights. The petition alleged that respondent was mentally ill and that such condition rendered her unable, presently and for the foreseeable future, to provide proper and adequate care for her child. Following a hearing, Family Court sustained the petition and terminated respondent's parental rights. Respondent appeals.

To support a termination of respondent's parental rights on the ground of mental illness, the petitioning agency must show that respondent is "presently and for the foreseeable future unable, by reason of mental illness . . . to provide proper and adequate care for [her] child who has been in the care of an authorized agency for the period of one year immediately prior to the

date on which the petition is filed in the court" (Social Services Law § 384-b [4] [c]; *see Matter of Donald W.*, 17 AD3d 728, 729 [2005], *lv denied* 5 NY3d 705 [2005]). The standard requires a showing of clear and convincing proof, with "testimony from appropriate medical witnesses particularizing how the parent's mental illness affects his or her present and future ability to care for the child" (*Matter of Robert XX.*, 290 AD2d 753, 754 [2002]; *see Matter of Joyce T.*, 65 NY2d 39, 46 [1985]).

Here, Richard Liotta, a licensed psychologist, testified that he evaluated respondent on two separate occasions, administered several tests, reviewed petitioner's files and spoke with her intensive case manager, prior therapist, treating psychiatrist, homemaker, and others before forming his opinion that respondent would never be able to adequately care for Ashley. He testified that she has a lengthy history of mental illness and suffers from a major depressive disorder. While Liotta's testimony confirmed respondent's recent improvements, he opined that she could not sustain these changes and would ultimately relapse. Testimony elicited from respondent's psychiatrist, Bruce Kokernot, was not to the contrary. Kokernot diagnosed respondent with mood disorder, impulse control disorder and personality disorder, yet noted substantial improvements in her ability to tolerate stress, take her medications and cooperate in treatment. He admitted on cross-examination that in 2001, he diagnosed her with bipolar disorder, intermittent explosive disorder, polysubstance abuse and borderline personality disorder. Describing a "continuum of improvement" in respondent's level of stability, Kokernot conceded that all of her psychiatric conditions were managed but enduring; at no time did he refute Liotta's testimony that respondent was likely to relapse. Giving due deference to Family Court's factual determinations, based upon its observations of witnesses and review of exhibits, coupled with the absence of contradictory expert evidence, petitioner's proof was sufficient to sustain the finding made (*see Matter of Donald W., supra* at 729).

We further disagree with respondent's assertions that she did not receive a fair hearing. Family Court's questioning of Liotta was proper since it was designed to clarify his opinion (*see Matter of Stanziano v Stanziano*, 235 AD2d 845, 846 [1997]). Moreover, given Liotta's history with that court, appropriate weight was given to his evaluation and a proper standard of review was utilized. As to respondent's contention that petitioner was unfairly portraying both her illness and parenting skills, we note the favorable testimony elicited from two workers affiliated with petitioner.

Next addressing the claim of ineffective assistance of counsel, respondent was required to "demonstrate that [s]he received less than meaningful representation and that [s]he suffered actual prejudice as a result of the claimed deficiencies" (*Matter of Jonathan LL.*, 294 AD2d 752, 753 [2002]; *see Matter of James P.*, 17 AD3d 733, 734 [2005]). In this type of proceeding, her showing will be evaluated " 'in totality and as of the time of the representation' " (*People v Henry*, 95 NY2d 563, 565 [2000], quoting *People v Baldi*, 54 NY2d 137, 147 [1981]; *accord Matter of Brenden O.*, 20 AD3d 722, 723 [2005]; *see Matter of Nicholas GG.*, 285 AD2d 678, 680 [2001]; *Matter of Matthew C.*, 227 AD2d 679, 682-683 [1996]). Upon our review, we find the showing insufficient. Respondent's counsel thoroughly cross-examined petitioner's witnesses, made appropriate objections and called several witnesses, including respondent, in support of her contentions. Counsel also moved for a directed verdict and made an appropriate closing statement. With respect to the contention that counsel should have had another expert examine respondent and testify at the hearing, the evaluation and testimony of her own psychiatrist undermined that strategy (*see Matter of James P., supra* at 734; *Matter of Jonathan LL., supra* at 753; *Matter of James HH.*, 234 AD2d 783, 785 [1996], *lv denied* 89 NY2d 812 [1997]). We have considered respondent's remaining arguments and find them to be lacking in merit.

Mercure, J.P., Crew III, Carpinello and Kane, JJ., concur. Ordered that the order is affirmed, without costs.