■ In the Matter of KAREN GG. and Another, Alleged to be the Children of a Mentally Ill and/or Mentally Retarded Parent and/or to be Permanently Neglected. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; MARLINE HH., Appellant. [898 NYS2d 685]—

Cardona, P.J. Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered March 27, 2009, which granted petitioner's application, in a proceeding pursuant to

Social Services Law § 384-b, to adjudicate respondents' children to be the children of a mentally ill parent, and terminated respondent's parental rights.

Respondent is the mother of two young children, Karen GG. (born in 2003) and Michael GG. (born in 2006), both of whom have special needs. In September 2006, a petition was filed alleging that respondent neglected the children and, in a November 2006 order, Family Court (McGill, J.) adjudicated the children to be neglected. At that time, the children were continued in respondent's custody and preventative services were provided to her. An order of protection was also entered providing that respondent comply with certain conditions such as, among other things, cooperating with the services, meeting the physical needs of her children and ensuring that the children's father, a registered sex offender, not be allowed within 1,000 feet of the children. Subsequently, in July 2007, a petition seeking modification of the November 2006 order and order of protection was filed alleging that respondent had not complied with the terms of those orders by, among other things, allowing the children to be in their father's presence. Thereafter, in an order entered July 24, 2007, the children were removed from her custody and placed in foster care.

In September 2008, petitioner commenced this proceeding seeking to terminate respondent's parental rights as to these children based upon her alleged mental illness.[1] As a result, Family Court (Lawliss, J.) ordered that respondent submit to a mental health evaluation by Richard Liotta, a licensed clinical psychologist. Following a hearing, the court determined that respondent was mentally ill and that condition rendered her unable, presently and for the foreseeable future, to provide adequate and proper care for the children. The court granted the petition and terminated respondent's parental rights.

Respondent maintains that petitioner's proof was insufficient to terminate her parental rights on the basis of mental illness.[2] Significantly, "[p]arental rights may be terminated if it is established by clear and convincing evidence that [the] respon-

---

1. Although the petition originally also contained causes of action sounding in mental retardation and permanent neglect, these claims were later withdrawn by petitioner.

2. Mental illness is defined as "an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child" (Social Services Law § 384-b [6] [a]; *see Matter of Henry W*, 31 AD3d 940, 941 [2006], *lvs denied* 7 NY3d 711 [2006], 8 NY3d 816 [2007]).

dent is presently and for the foreseeable future unable, by reason of mental illness . . . to provide proper and adequate care for a child who has been in the care of an authorized agency for the period of one year immediately prior to the date on which the petition is filed in the court" (*Matter of Casey L. [Joseph L.]*, 68 AD3d 1497, 1498-1499 [2009] [internal quotation marks and citation omitted]; *see* Social Services Law § 384-b [4] [c]; *Matter of Joyce T.*, 65 NY2d 39, 44-45 [1985]). This ground requires proof not only "of the underlying condition afflicting the parent, but also that such condition creates a current and future danger of the child not receiving proper and adequate care" (*Matter of Henry W.*, 31 AD3d at 941; *see Matter of Shawndalaya II.*, 46 AD3d 1172, 1174 [2007], *lv denied* 10 NY3d 703 [2008]). The court must be presented with "testimony from appropriate medical witnesses particularizing how the parent's mental illness affects his or her present and future ability to care for the child" (*Matter of Robert XX.*, 290 AD2d 753, 754 [2002]; *see Matter of Joyce T.*, 65 NY2d at 46; *Matter of Arielle Y.*, 61 AD3d 1061, 1062 [2009]; *see also* Social Services Law § 384-b [6] [e]).

Here, Liotta's detailed report was admitted into evidence without objection, and Family Court took judicial notice of prior orders of fact-finding and disposition concerning the neglect allegations. Furthermore, Liotta testified that, after reviewing information provided by petitioner—including background information, court orders, petitions, notes and mental health records—as well as examining respondent and speaking with social workers, caseworkers and homemakers, respondent suffered from a mental illness as defined by Social Services Law § 384-b (6) (a). Specifically, Liotta diagnosed respondent with "[a] personality disorder not otherwise specified with dependant antisocial features and also borderline intellectual functioning." He also opined that she suffered from dysthymic disorder, i.e., "a longstanding chronic course of low to moderate level depression." Liotta opined that, while standing alone, dysthymic disorder might not preclude respondent from being able to adequately provide care, her personality disorder and its features, exacerbated by her borderline intellectual functioning, negatively impacted her ability to problem solve, parent her children for the immediate future or provide them with proper medical care given their significant special needs.

Moreover, Liotta testified that respondent's mental condition led to problems with interpersonal functioning exemplified by, among other things, her decision to engage in relationships with various sex offenders, thus exposing her children to risk.

Liotta also noted that respondent made insufficient progress in improving her parenting skills and internalizing the information necessary to, for example, feed her son with the strict attention required due to his swallowing disorder. He noted that respondent's cognitive distortions caused her to "dismiss information that she should take as important." He was also concerned by the proof that respondent refused to discipline her daughter because of her fear of being rejected by her (*see Matter of Roseanna X.*, 22 AD3d 993, 995 [2005]). This and other proof showed, by clear and convincing evidence, how respondent's mental illness endangered the children's welfare and precluded her from caring for them for the immediate future (*cf. Matter of Arielle Y.*, 61 AD3d at 1063). While respondent points out that Liotta's findings as to her mental health differ to some extent from prior examinations, Liotta explained that the other evaluations were made in different contexts, while his findings were the result of a more comprehensive examination. In sum, giving deference to Family Court's credibility and factual determinations (*see Matter of Shawndalaya II.*, 46 AD3d at 1175; *Matter of Alexis X.*, 23 AD3d 945, 947 [2005], *lv denied* 6 NY3d 710 [2006]), we conclude that petitioner met its burden and no basis for reversal has been demonstrated (*see Matter of Chelsea KK.*, 28 AD3d 849, 851 [2006], *lv denied* 7 NY3d 704 [2006]; *Matter of Alexis X.*, 23 AD3d at 947; *Matter of Ashley L.*, 22 AD3d 915, 916 [2005]).

Respondent's remaining arguments have been examined and found to be unpersuasive.

Lahtinen, Malone Jr., Stein and Garry, JJ., concur. Ordered that the order is affirmed, without costs.